## WILLARD PRINK v. HERMAN TONAK, JR., AND ANOTHER.

140 N. W. (2d) 70.

January 14, 1966—No. 39,375.

*Schermer & Gensler* and *Irvin E. Schermer,* for appellants.

*Murnane, Murnane, Battis & deLambert* and *Robert B. McCarthy,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action by plaintiff, Willard Prink, against defendants, Herman Tonak, Jr., and Wallace R. Berg, for injuries and property damage sustained by plaintiff when a tractor-trailer unit owned by Tonak and operated by Berg collided with an Allis-Chalmers farm tractor owned and operated by plaintiff.

The trial court directed a verdict for plaintiff on issues relating to negligence and contributory negligence and the jury returned a verdict for him in the sum of $18,900. Thereafter defendants moved for a new trial on the ground that the court erred in directing the verdict for plaintiff on the issues described and on the further ground that statements made in the final argument of plaintiff's counsel constituted prejudicial conduct. This appeal is from the order denying the motion described.

The accident occurred April 24, 1962, at about 2:15 p. m. on State Highway No. 52, one mile south of Cannon Falls. Highway No. 52 there consists of two lanes and extends northerly and southerly. At the time, plaintiff was driving his farm tractor northerly in the easterly lane of this highway when its left rear wheel was struck by the right front bumper of defendant's tractor-trailer, which was also proceeding northerly and to the rear of plaintiff. The weather was clear and the terrain and highway level, without any obstructions to the vision of drivers proceeding northerly thereon. As a result of the collision, plaintiff was knocked from the seat of his tractor and sustained injuries for which this action was instituted.

In support of their contention that issues of negligence and contributory negligence were for the jury, defendants refer to the deposition of Mr. Berg, wherein he testified that immediately prior to the accident the braking equipment of the tractor-trailer unit was in good condition; that a short distance before the point of impact he had descended a hill on Highway No. 52 and thereafter ascended a small knoll; that he had then proceeded to pass an automobile also proceeding northerly on the highway in front of the tractor-trailer; that then he had observed a truck approaching him in the westerly lane of the highway about 1,500 to 1,800 feet to the north; that he had then looked into his rearview mirror to ascertain whether he had cleared the automobile he was passing and could turn back into the easterly lane; that as he turned back toward such lane he had first observed plaintiff's tractor traveling northerly in front of him about 15 miles per hour in the easterly lane of the highway; that in rapid sequence he had then applied the tractor brakes, sounded its horn, pulled on its hand brakes, and operated the emergency valve controlling the trailer brakes; that after these actions the air-braking mechanism locked the trailer wheels as it was intended to do; that he had also tried to diminish his

speed by shifting down two or three gears; that once or twice he had released the tractor brakes because of his fear that the trailer might "jack-knife" around the tractor; that at the same time he turned the tractor toward the east shoulder of the highway in an attempt to pass plaintiff's tractor on its right; that he then observed that he could not safely go onto the east highway shoulder, which had guardrails at its outer edge, because it was soft and a considerable distance above the bottom of the adjacent embankment; that he then tried to steer the tractor-trailer to his left to go between plaintiff's tractor and the oncoming truck and while all three vehicles were about to meet he again moved to his right, then striking the left rear wheel of plaintiff's tractor with the right bumper of his tractor; that at no time had he traveled more than 60 miles per hour and that prior to the impact he had reduced his speed to about 20 or 25 miles per hour while plaintiff's tractor had been traveling at a speed not in excess of 15 miles per hour; that after his tractor-trailer was brought to a stop, he discovered that the diaphragm or "pancake" in the braking system was leaking air but the only effect of this would be to lessen the air pressure after the trailer wheels were locked; and that this could not have had any relationship to stopping or braking the equipment prior to the accident.

In his final argument plaintiff's counsel stated that defendants' medical testimony constituted an admission that the pain and injury to plaintiff's back were caused by the accident and also established that the lower portion of his spine would have to be fused and thereafter would be solid "like a poker." He further stated:

"* * * Remember that the man through his own efforts had succeeded in producing income of about in the range of nine to ten thousand dollars, and we handed them the tax returns so they could look at them. * * *

\* \* \* \* \*

"* * * we do know that for the year 1961 and 1962 the difference in his net earnings the first year this happened to him amounted to $1146. * * * If you take, as I suggest, the gross earnings of nine or ten thousand dollars, scale that down by some percentage that you think is proper. If you take 50% of it you will come up with $4500."

He further stated with reference to plaintiff's son:

"* * * Here is a young boy 14 years of age. He can help his father some and does help his father some. We don't know what type of career this young man would choose for himself. He has a right to make the same choice that you and I, and that his father made, but it may well be that with a disabled father his choice will necessarily be in that farm and field to help."

At the close of this argument, defendants' counsel objected to the statements referred to on the grounds that (1) they conveyed the impression that defendants' doctor had testified that a fusion of the vertebrae would be required when actually his testimony was merely that the operation required at the time might indicate that such a fusion was necessary; (2) the reference to plaintiff's son was an attempt to inflame the jury; and (3) the argument conveyed the impression that plaintiff was earning $9,000 to $10,000 per year net.

The following proceedings then took place out of hearing of the jury:

"The Court: * * * I will say this, that if counsel has said anything in the course of argument involving what the witnesses said that does not coincide with what their recollection was, they should follow their recollection.

"Mr. Schermer [counsel for defendants]: * * * I am not personally satisfied with that general abstract statement where in my opinion a misstatement as to earnings has been so glaring as it has in this case."

In its instructions to the jury, the court stated:

"* * * You may award him such a sum for loss or diminution of power to earn in the future as he may have sustained as a result of such accident. Such loss may be based on such factors as plaintiff's age, life expectancy, health habits, occupation, talents, skills, experience, training and industry. It is within the province of the jury to weigh all these elements and, guided by your experience and common sense, to arrive at the proper monetary value of plaintiff's loss of earning capacity resulting from such injuries, without recourse to his past earnings, all as established by a fair preponderance of the evidence to a reasonable certainty."

The court further instructed the jury:

"Now if counsel in the course of argument to you has said anything about what the evidence was in this case which does not coincide with your recollection of what the evidence was, then you will follow your own recollection of what the evidence was."

In commenting on defendants' contentions in a memorandum attached to the order denying defendants' motion for a new trial, the court stated:

"* * * Mr. Schermer, defendants' counsel, * * * referred to what he termed the most serious misstatements made by plaintiff's counsel, indicating that he had on at least five occasions stated the man was earning ten thousand dollars a year in the operation of his farm * * *. Whereas his net earnings in one year was approximately $1700.00, and approximately $900.00 another year. A reference to the record shows that plaintiff's counsel used both gross figures and net figures when he was talking about income. He at one time definitely referred to gross income as being ten thousand dollars a year. * * * In this connection it may be noted that both plaintiff's counsel and defendants' counsel * * * erroneously offered evidence which was received without objection * * * whereby they endeavored to indicate the extent of damages sustained by the plaintiff by referring to the income derived from the farm before and after the injury. This, of course, is erroneous, but neither side objected to such evidence. * * * the court, in instructing the jury as to damages, definitely instructed them upon what they might base damages. He said nothing that would indicate they could use the income of the farm as a basis for computing the damages * * *.

"* * * The jury was attentive. There is no reason to believe that they failed to heed the admonishment of the court as to considering only the evidence that actually had been received.

"In light of the evidence as a whole, and the general conduct of the case, and the atmosphere that pervaded throughout, it is clear to the court that there was a complete absence of passion and prejudice as far as the jury was concerned."

On appeal defendants urge that from the evidence above outlined the

jury might have found (1) that a brake defect unknown to defendants prior to the accident had prevented Berg from stopping his vehicle in time to avoid the accident so that in the face of the emergency his conduct would not constitute negligence; (2) that plaintiff's operation of his farm tractor at a speed of about 15 miles per hour was a violation of Minn. St. 169.15[1] and constituted negligence proximately contributing to the accident; and (3) that plaintiff's failure to either keep a lookout to his rear or to listen for warning signals or to drive his tractor onto the east shoulder when danger became imminent was negligence proximately contributing to the accident. They also contend that the statements made by plaintiff's counsel in his final argument constituted prejudicial error.

■ We are of the opinion that the court did not err in directing a verdict in favor of plaintiff on the negligence issues. Mr. Berg testified that the tractor-trailer brakes were in good condition and that nothing in the mechanical condition of the tractor had anything to do with the happening of the accident. His testimony was that *after* the trailer wheels were properly locked and his equipment brought to a stop, he discovered that the diaphragm or "pancake" of the braking system was leaking air but that this had had no effect on his ability to stop his equipment prior to the accident. Accordingly, by no logical reasoning could it be held that this defect was a proximate cause of the accident. Trudeau v. Sina Contracting Co. Inc. 241 Minn. 79, 62 N. W. (2d) 492, and Minder v. Peterson, 254 Minn. 82, 93 N. W. (2d) 699, cited by defendants in support of their contention on this point, have no application here. In both of those cases it was held merely that where defective brakes were the cause of an accident, but where such defects were unknown to the owners of the equipment who had recently had brakes inspected for defects and such defects were not disclosed in such inspections, the court might properly instruct the jury with respect to the emergency doctrine. Here no evidence was presented of a prior brake inspection by defendants and all evidence was to the effect that all brakes were in good condition and

---

[1] Minn. St. 169.15 provides in part: "No person shall drive a motor vehicle at such a slow speed as to impede or block the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with law."

had operated and functioned exactly as they were intended to operate prior to the collision.

■  All evidence makes it clear that the court correctly instructed the jury with respect to Berg's negligence. He conceded that just prior to the accident he had had a clear view of the highway to the north for approximately 1,800 feet and that for this distance there were no obstructions to conceal plaintiff's tractor from him, but that when he first saw it it was only from 400 to 600 feet ahead of him on the highway. He testified:

"Q.  Do you know why you didn't see the tractor before * * *?

"A.  Well, I imagine when I was watching the mirror, when I first noticed him, I don't think the tractor was on the road, to tell you the truth. I don't think I seen it—"

Obviously, had he been keeping a proper lookout for traffic moving on the highway and exercising commensurate care at the time, he would not have endangered plaintiff by attempting to pass the automobile preceding him when this could not be done with safety.

■  There is no evidence to sustain a finding that plaintiff was guilty of negligence proximately contributing to the accident by operating his tractor at a speed of 15 miles per hour at the time of the collision. No statute prohibits tractors of this type from using state highways, and had the legislature intended the provisions of § 169.15, above quoted, to have this effect, it would have so indicated in clear and definite terms. Further, the provisions of § 169.18, subd. 10,[2] clearly contemplate the operation of slow-moving vehicles upon the highways and that their use thereon is proper where they proceed as close as practicable to the right-hand edge of such highways.

Likewise, Berg's testimony negatives the contention that plaintiff could have turned his tractor onto the right or east shoulder of the highway to avoid the accident. Such testimony established that because of the soft

[2] Minn. St. 169.18, subd. 10, provides: "Upon all roadways any vehicle proceeding at less than the normal speed of traffic at the time and place and under the conditions then existing shall be driven in the right-hand lane then available for traffic, or as close as practicable to the right-hand curb or edge of the roadway * * *."

condition of this shoulder, as well as the deep ditch, and the adjacent guardrails, Berg feared to move his tractor onto it, and certainly plaintiff was not required to follow a course of conduct which defendants admit would have been dangerous to Berg. It is interesting to note that a similar contention with respect to a horse and wagon being driven on the highway was made in Stone v. Sigel, 189 Minn. 47, 248 N. W. 285, where Mason St. 1927, § 2720-9, preceding Minn. St. 169.18, subd. 10, was under consideration.[3] There this court stated (189 Minn. 49, 248 N. W. 286):

"It is claimed by the defendant that the evidence shows the plaintiff violated this statute [Mason St. 1927, § 2720-9] and * * * was guilty of contributory negligence as a matter of law. * * * The defendant bases his claim * * * largely upon the fact that at the point where the collision occurred there was a five-foot shoulder outside of the pavement upon which it was possible to drive, though there is no contention that that shoulder consisted in any way of the traveled portion of the highway. * * * The tenor of the statute requires all drivers, when practicable, to keep on the right half of the traveled portion of the highway. Slow moving vehicles are required to keep as closely as possible to the right-hand edge of such right half. * * * Had the case gone the other way [for defendant] it might have been somewhat difficult for him [defendant] to have pointed out * * * sufficient evidence to sustain the submission of this question to the jury, or indeed any question of contributory negligence on the part of the plaintiff."

■ Likewise, it seems clear that plaintiff's conduct prior to the collision in looking forward rather than to the rear did not constitute negligence. A similar contention was made in Nash v. Christenson, 241 Minn. 164, 169, 62 N. W. (2d) 800, 803, where this court stated:

---

[3] Mason St. 1927, § 2720-9, provides: "Upon all highways of sufficient width, except upon one way streets, the driver of a vehicle shall drive the same upon the right half of the traveled portion of the highway and shall drive a slow moving vehicle as closely as possible to the right-hand edge or curb of such highway, unless it is impracticable to travel on such side of the highway and except when overtaking and passing another vehicle."

"* * * [T]he top speed of the motor grader is 15 miles per hour and * * * it was being driven at that speed on the day in question. Clifford Strassburg [the driver] testified that he did not observe whether there were vehicles to the rear at all times since he was paying attention to where he was going in a forward motion and that he had not looked back for about one mile. * * *

"It is the position of Christenson and Hammer [defendants] that this situation presented an issue for the jury and that the jury might have held that under the circumstances due care would require the driver of a slow-moving vehicle not only to keep a reasonable lookout to his rear and give warning signs when advisable but also to give way by driving on the shoulder where a situation of danger was being created.

"We cannot agree with such a contention. There was no evidence to show that Clifford Strassburg was not on his own side of the road, nor was there evidence that he was driving in an unlawful manner. It must be remembered that he testified that he looked back occasionally. He still had a primary duty to keep a lookout in the direction in which he was moving. To hold that his actions under the circumstances here raised a question of negligence for the jury would be to impose a duty on the driver of the front vehicle to be on an almost constant lookout to the rear so as to be able to give a warning signal to a fast-approaching car behind him at almost the instant the driver of such a car decided to swing out of his line of traffic to attempt to pass. This we do not believe to be the law."

Based upon the foregoing we conclude, as did the trial court, that as a matter of law the evidence established that the sole cause of the accident was the negligence of defendant Berg in his operation of the tractor-trailer unit at the time of the accident.

■ We find no prejudicial error in the reference of plaintiff's counsel to the medical testimony in his final argument. Dr. Ralph Rayner, called by defendants, testified that if the symptoms in plaintiff's sciatic nerve, with the attendant pain in his left leg and toes, followed the accident in a matter of hours and had not been present for some 10 years prior thereto, in his opinion there would be a causal relationship between the accident and the symptoms described. He further testified that if after a

period of conservative treatment plaintiff's back did not respond and the pain remained so that he could not perform his work properly (which was true at the time of trial), surgery for the removal of the herniated disc in plaintiff's back would be required and if mobility in the adjacent vertebrae was then disclosed such vertebrae would have to be fused to make them rigid. Accordingly, the final argument of plaintiff's counsel with reference thereto would not seem to be so far afield as to mislead the jury, particularly where the court instructed the jury that it was to rely upon its own recollection of the evidence rather than upon the argument of plaintiff's counsel.

Likewise, the statement that plaintiff's son might be required to assist his father in the future was based upon an implication from evidence submitted without exception to the effect that since the accident he had been helping plaintiff. The court specifically instructed the jury as to the items upon which it should measure plaintiff's damages, no reference being made therein to the son's future prospects because of the accident as an item to be considered.

With respect to the contention of defendants that reference of plaintiff's counsel to plaintiff's earnings did not differentiate between gross earnings and net earnings and accordingly the jury was misled, we find no merit. Plaintiff's counsel specifically described the "nine or ten thousand dollars" as "gross earnings" and indicated what might be considered net earnings. Evidence concerning plaintiff's income tax statements, received without objection, further manifested his net earnings during the years referred to. Further, the court specifically instructed the jury that it should not consider past earnings in estimating plaintiff's damages. Under such circumstances, we find no prejudicial error in the statement referred to.

Affirmed.