## HAROLD WIMPERIS AND ANOTHER v.
## SIEGFRIED SATZINGER.

140 N. W. (2d) 323.

January 28, 1966—No. 39,672.

*Robert E. Lucas* and *Byron W. McCullagh,* for appellants.

*Meagher, Geer, Markham & Anderson, T. L. Adams,* and *O. C. Adamson II,* for respondent.

ROGOSHESKE, JUSTICE.

After verdict in defendant's favor, the trial court denied plaintiffs' motion for a new trial. They appeal from that order and from the judgment.

On December 10, 1961, at about 7 p. m., a rear-end collision occurred between a Ford vanette truck operated by plaintiff Harold Wimperis and a Dodge automobile operated by defendant, Siegfried Satzinger. The collision occurred near the intersection of Highways No. 100 and No. 169. Plaintiff Hazel Wimperis was a passenger in the truck driven by her husband. At the time of the accident it was dark, the temperature was about 10 degrees below zero, and the roads were very slippery, being hard-packed with snow and ice.

Immediately before the truck was struck, it was stopped in the eastbound lane of Highway No. 100 facing east and some distance west of where Highway No. 100 intersects with Highway No. 169. The intersection is controlled by traffic semaphores. In obedience to a red semaphore light, Mr. Wimperis had stopped behind five or six other cars, all of which were waiting for the light to change. He testified he stopped one car length behind the vehicle immediately in front of him and remained standing for 5 to 8 seconds, when his truck was rear ended by defendant's vehicle. He stated his truck was thrown ahead 40 feet by the force of the impact, but it did not strike any vehicles ahead of him. Mrs. Wimperis was seated immediately to her husband's right on a stationary platform which covered the vehicle's engine. She was facing the rear of the truck, and according to her the force of the impact caused her to be thrown to the rear and to strike her head and chest upon deck boards located in the rear of the truck.

At the time of the collision, a Pontiac driven by witness Lee Morgan was stalled on the north shoulder of Highway No. 100, facing west. Its parking lights were on. Directly behind Morgan's Pontiac, also facing west, was a tow truck driven by witness Gerald Haas. Its flashing red spotlight was operating. Both of these vehicles were positioned almost directly across the highway from the Ford truck. Mr. Wimperis testified they were opposite his vehicle and about 15 feet behind or to the west of him.

Defendant testified that he had been visiting relatives who lived about 4 miles from the intersection. The last 2 miles of the distance to the scene were traveled easterly on Highway No. 100. His wife rode with him in the front seat with their baby on her lap. He testified that his speed on Highway No. 100 was only 30 miles per hour because he knew the road was "very icy, * * * very slippery." Both he and his wife testified that the windshield was clear and without frost.[1] He declared that his visit with relatives was not long enough for the windshield to "frost up" and that his "heater work[ed] perfectly."

Defendant stated that as he approached the intersection he had "full

---

[1] On cross-examination, he admitted to some frost on his windshield but insisted that it did not obstruct his vision.

vision" ahead and that, although he saw the flashing red light of the tow truck, he did not see the disabled Pontiac, the red semaphore light, or the other vehicles stopped in his lane of travel. He testified that, as he was traveling at a speed under 30 miles per hour, he saw the Ford vanette "all of a sudden" when he was 40 feet away; that he "automatically" applied his brakes, but due to the icy condition of the road there was no traction and he could not stop his car or prevent it from skidding into the rear of the truck. He testified that his speed on impact was 15 miles per hour and that plaintiffs' truck was pushed forward about 1 foot. Neither he, his wife, or the baby were injured. He also testified that at no time before or after the accident did he see a taillight burning on plaintiffs' vehicle. His wife, who said she had a clear view ahead, also did not see one. Mr. Wimperis, however, testified that he observed his taillight to be in working order after the collision, although he admitted that his truck had not been washed since the fall of 1961.

The testimony is in dispute as to defendant's speed, the amount of frost on the windshield of his vehicle, the force of the impact, and whether the taillight of plaintiffs' truck was working or visible prior to the collision. Defendant's testimony as to speed and the force of the impact was supported by the testimony of his wife and witness Haas, who saw the collision while sitting in his tow truck with the window down. Witness Morgan, who was standing outside talking to Haas, also saw the collision and estimated defendant's speed to be over 30 miles per hour at impact and believed he observed considerable frost on the windshield. He and Mr. and Mrs. Wimperis testified the truck was thrown ahead about 35 to 40 feet.

Both plaintiffs claim personal injury. Mrs. Wimperis, who was described by her psychiatrist as a "[s]omewhat immature hysteroid personality," claimed serious permanent physical and emotional disability, based wholly upon subjective complaints.

Implicit in the general verdict for defendant and against both plaintiffs is a finding either that there was no negligence on the part of defendant, or that Mr. Wimperis was contributorily negligent and that Mrs. Wimperis had failed to sustain her burden of proof that she in fact sustained any personal injuries as a result of the accident.

Plaintiffs contend that defendant was negligent as a matter of law and and that it was error to refuse to direct a verdict on this issue. Whether this issue was for the jury depends on (1) whether the testimony presented disputed questions of fact, and (2) whether, resolving all such disputes and the inferences to be drawn therefrom most favorably to defendant, the evidence is such that no reasonable person would accept it as sufficient to justify finding that defendant was not negligent under the circumstances.

The nature of a rear-end collision is such that it alone often suggests negligence of the driver of the striking vehicle. Thus it is not unusual that in most of such cases the operator of the striking vehicle is found negligent as a matter of law.[2] However, it is fundamental that the facts and circumstances of each case rather than the nature of the accident dictate the result.[3] It must be recognized that cases do arise where the conduct of the driver of the striking vehicle should be judged by the jury rather than the court.[4] Where the issue of such driver's negligence is submitted to a jury and he is exonerated, care must be taken in our review of the sufficiency of the evidence to adhere to the rule of construing the evidence most favorably to him.

In this case we believe that our efforts to fairly summarize the testimony demonstrate that the issue was properly for the jury and that we must, upon this record, hold the evidence sufficient to justify a finding that defendant was free from negligence.

Accepting defendant's version of the disputed facts, there are a number of facts and circumstances which the jury could have found prevented defendant from seeing plaintiffs' vehicle before it was too late to stop, and none of which could have been attributed to a failure to exercise reasonable care. Defendant was traveling at a properly reduced speed under the circumstances; his windshield was clear and he had a full and unobstructed

[2] E. g., Souden v. Johnson, 267 Minn. 151, 125 N. W. (2d) 742; Prink v. Tonak, 273 Minn. 46, 140 N. W. (2d) 70; Sims v. Hallett Const. Co. 247 Minn. 339, 77 N. W. (2d) 54.

[3] Pluwak v. Lindberg, 268 Minn. 524, 532, 130 N. W. (2d) 134, 140.

[4] Teas v. Minneapolis St. Ry. Co. 244 Minn. 427, 70 N. W. (2d) 358; Hardy v. Anderson, 241 Minn. 478, 63 N. W. (2d) 814; Ryan v. Griffin, 241 Minn. 91, 62 N. W. (2d) 504; Nees v. Minneapolis St. Ry. Co. 218 Minn. 532, 16 N. W. (2d) 758.

view ahead. Plaintiffs' truck was stopped a considerable distance, perhaps as much as 175 feet, from the traffic semaphores. The taillight on plaintiffs' vehicle was not visible because it and the rear of the truck was covered with dirt and grime, causing it to blend in with the road and dark night. The road was very slippery and there was not the slightest traction when brakes were suddenly applied. The tow truck with its attention-attracting flashing red light was parked adjacent to plaintiffs' truck. It would not be unlikely that the jury viewed plaintiffs' testimony concerning the disputed facts as exaggerated. Thus, because the truck was not readily discernible and was stopped so far from the intersection, the jury could, and probably did, conclude that defendant was not reasonably required to anticipate its presence upon the highway, and these factors, together with the distracting circumstance of the blinking red light, excused his failure to see and stop his vehicle until he was too close to prevent a very minor collision with the truck.

Although it is difficult for some of us to understand how the jury found defendant's lookout adequate, nevertheless in reviewing this type of case we must be constantly mindful of our limited role and give due weight to the judgment of the jury and the trial judge, who observed the witnesses and determined the persuasive force of their testimony and who have respectively declared and approved the result. Since the judgment of reasonable men might well differ in resolving the disputed facts and the conclusions to be drawn therefrom, and we cannot say as a matter of law that the evidence was insufficient to support a finding that defendant was free of negligence, the jury determination is conclusive. The decision we have reached makes it unnecessary to pass upon the other issues raised by plaintiffs.

Affirmed.