## DUANE REHNKE v. HAROLD M. JAMMES AND ANOTHER.

168 N. W. (2d) 494.

May 29, 1969—No. 41196.

432

*Mahoney & Mahoney, Richard P. Mahoney,* and *John F. Angell,* for appellants.

*Michael J. Fitzgerald,* for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

OTIS, JUSTICE.

Plaintiff has recovered damages for personal injuries sustained when his automobile was struck from the rear by defendant Harold M. Jammes. On appeal, defendants assign as error: (1) Granting plaintiff a directed verdict on the issue of liability; and (2) permitting the jury to award damages for permanent injury.

Viewing the evidence in the light most favorable to defendants, it was Jammes' version of the accident that on January 13, 1964, at 8 a. m., he was driving an automobile owned by his employer, defendant Mohawk Rubber Company, in an easterly direction on West Broadway at a rate of 20 to 25 miles an hour. He crossed Irving Avenue North and was in the lane nearest the centerline when he came upon

plaintiff's car which was at a standstill some 50 feet to a quarter of a block east of Irving Avenue, waiting in a line of cars for a change of semaphore at the next intersection, Emerson Avenue North. Jammes skidded 30 or 35 feet into the rear of plaintiff's car at a speed of approximately 5 miles an hour. The pavement was slippery with frost, and Jammes' vision was to some extent obscured by the fact that the street curved to the right east of Irving Avenue and there were parked cars in the right lane.

■ Defendants argue that the question of Jammes' negligence was a jury issue and that his inability to stop in time to avoid the accident was attributable to his blocked vision and the slippery street. We have sustained verdicts for the defendant in a number of recent cases where the plaintiff who was struck from the rear has asserted that defendant was negligent as a matter of law. Wimperis v. Satzinger, 273 Minn. 121, 140 N. W. (2d) 323; Connaker v. Hart, 275 Minn. 289, 146 N. W. (2d) 607; Tibbetts v. Nyberg, 276 Minn. 431, 150 N. W. (2d) 687. As we said in the Wimperis case, such collisions often suggest negligence on the part of the driver of the rear car. In that case and in the Connaker case, we had difficulty understanding how a jury could exonerate the defendant but nevertheless sustained their verdicts. In both Wimperis and Tibbetts, we noted that the jury may have found the plaintiffs' testimony exaggerated. There is merit in defendants' argument that the Connaker case is difficult to distinguish. Nevertheless, Connaker involved two moving vehicles, the first of which had stopped at an intersection just before being struck. In Connaker, we distinguished Ceeder v. Kowach, 17 Ill. App. (2d) 202, 149 N. E. (2d) 766, where negligence was found as a matter of law for skidding on a street which was wet but not slushy, as in Connaker. While these may seem to be fine distinctions, we cannot escape the conclusion that the trial court was correct in directing a verdict against defendants under the circumstances here present. Unlike Wimperis, it was broad daylight, and, unlike Connaker, the highway was merely frosty and plaintiff's car was at a standstill for some moments. It was 8 o'clock in the morning, and traffic was heavy. Consequently, we are of the opinion that defendant Jammes should

have anticipated there would be traffic ahead of him on West Broadway waiting at intersections for traffic signals to change. It was his duty to have his car under control when he crossed Irving Avenue if, as he asserts, his vision was obscured. It was therefore not error for the trial court to find defendant negligent as a matter of law.

■  A more troublesome question arises out of the instructions with respect to damages. Plaintiff had been previously injured on November 15, 1963, when his car was struck from the rear by one Tischa Nichols. Plaintiff's action against Miss Nichols was consolidated with this action. The jury returned a verdict in favor of plaintiff in the sum of $5,600 against defendants, and a verdict in favor of plaintiff against Nichols in the sum of $10. Nichols has taken no appeal.

Defendants assert that it was error for the trial court to permit the jury to find Jammes responsible for any permanent injury which plaintiff sustained because the medical testimony is conclusive that any permanent injury suffered by plaintiff is attributable to Nichols. Plaintiff, on the other hand, argues that but for the second accident his preexisting condition would not have been aggravated so as to result in a permanent disability.

There is implicit in the two verdicts a finding by the jury that the second accident was the cause of plaintiff's permanent disability. We hold that it was error to permit the jury so to find and remand for a new trial on the issue of damages.

Plaintiff's doctor, Donald O. Madsen, an orthopedic surgeon, first saw plaintiff on January 18, 1964. He diagnosed plaintiff's difficulties as a protruded cervical intervertebral disc. Plaintiff was hospitalized from January 18 until January 27. Dr. Madsen testified that in his opinion the accident of November 1963 caused the symptoms which he found and that they were aggravated by the second accident. He stated plaintiff had a 10-percent permanent partial disability of the spine. Dr. Madsen responded to a leading question on cross-examination in the following manner:

"Q. But now you say that, if I understand your testimony correctly, do you now say that some residual from that first accident, as to whether it was permanent you wouldn't say, you now say is per-

manent because of the sneeze and because of the second accident? Is that what you are saying?

"A. That's what I have said."

However, almost immediately thereafter, he clarified his answer with the following testimony:

"Q. We have to be practical in these matters and determine to what degree, if any, these subsequent events affect some prior condition. And I wish you would tell me, Doctor, what, what part, or what part of the residual from that first accident, the accident of November 15, 1963, you are able to say is now permanent?

"A. What I have stated in the direct examination was that I felt the injury of November 13th was responsible for the subsequent herniated cervical disc and it was this problem which has not completely resolved which is the cause of the permanent impairment, although it has been aggravated symptomwise since by subsequent accidents."

There was no medical testimony that the second accident was the proximate cause of any permanent injury. The "sneeze" to which the doctor referred occurred between the November and January accidents and caused symptoms which both plaintiff's and defendants' doctors believed were significant evidence that further injury to the cervical disc had resulted.

This is not the kind of an injury which a layman is qualified to prognosticate is permanent, as in the case of the loss of a limb or other obvious disability. It is within the peculiar expertise of the medical profession to assess the permanent damage which has been caused by each of successive accidents.

No case has come to our attention where a jury has been permitted to find which tortfeasor has caused permanent injury in the absence of competent medical testimony. Nor has any decision sustained an award for such injury in the face of medical testimony by both parties that no permanency was attributable to the trauma for which such recovery was sought.

We said in Haugen v. N. P. Ry. Co. 132 Minn. 54, 58, 155 N. W. 1058, 1059, that there may be cases where a jury can make a diag-

nosis without medical testimony, but held that no prognosis could be made in this case without such evidence.

We allowed the court to charge on permanent injury without an expert opinion in McClain v. City of Duluth, 163 Minn. 198, 202, 203 N. W. 776, 777, where plaintiff's injury resulted in a miscarriage. However, there was not, as here, positive medical testimony on both sides refuting a finding of any permanency attributable to the defendants held liable.

Again, in Kundiger v. Prudential Ins. Co. 219 Minn. 25, 29, 17 N. W. (2d) 49, 52, we held that without some supporting medical testimony a jury was not competent to decide whether the cause of death was trauma or disease, stating that the jury could not arbitrarily reject the unanimous opinion of qualified experts.

While there is dictum in Carpenter v. Nelson, 257 Minn. 424, 430, 101 N. W. (2d) 918, 922, that permanent injuries may sometimes be proved without expert medical evidence, there was not in that case as here, uncontradicted medical testimony that the defendants held liable were responsible only for the aggravation of a permanent injury caused by a different tortfeasor.

Under these circumstances, we agree that the verdicts are perverse. While the charge on liability for aggravating a preexisting condition was proper, it was the duty of the court to advise the jury that defendant Nichols was alone liable for the permanent injury and the other defendants were liable only for whatever aggravation resulted from the January 1964 accident. Accordingly, the matter is reversed and remanded for a new trial on the issue of damages only.

Reversed and remanded.