**Marilyn MORRIS, Appellant,**

v.

**Marlene LITTLER, Respondent.**

No. CX–86–1122.

Court of Appeals of Minnesota.

Jan. 27, 1987.

H.M. Kershner, Rufer & Hefte, Fergus Falls, for appellant.

David L. Stowman, Detroit Lakes, for respondent.

Heard, considered and decided by LESLIE, P.J., and FOLEY and RANDALL, JJ.

## OPINION

RANDALL, Judge.

In June 1984, respondent brought a negligence action for bodily injury arising out of an automobile accident in April 1981. Appellant admitted liability for negligence. In a special verdict, the jury found that plaintiff had sustained no permanent injury, that medical expenses totaled $3,211.90 (minus $2,370.04 that had been paid as no fault benefits), and that general damages amounted to $10,000.

After the return of the special verdict on damages and after the court had, in chambers, heard David Cameron's testimony with respect to punitive damages, Cameron was allowed to testify before the jury about his observations of appellant's sobriety after the accident. After denying appellant's motion for a directed verdict, the court gave additional jury instructions on punitive damages. In a supplemental verdict, the jury awarded respondent $20,000 punitive damages.

Appellant moved for judgment notwithstanding the verdict on the issue of punitive damages and respondent moved for judgment notwithstanding the verdict or, in the alternative, a new trial on the issue of permanency of respondent's injury. On June 26, 1986, the trial court entered judgment awarding respondent $841.86 (damages minus basic economic loss benefits paid by respondent's no fault insurer) and $20,000 punitive damages. The court denied appellant's and respondent's cross-motions for post trial relief.

Morris appeals the punitive damages portion of the judgment. Littler appeals the portion of the judgment finding no permanent injury and denying her request for costs. We affirm in part and reverse in part.

## FACTS

On April 11, 1981, respondent was driving east on U.S. Highway 10, a four-lane highway. Respondent approached the intersection of County Road 11 and Highway 10 at approximately fifty-five miles per hour. Appellant, who was traveling south on County Road 11, approached the intersection with Highway 10 and stopped at the stop sign located there. She then crossed the westbound lanes of Highway 10. There was a yield sign at the median, but appellant failed to yield before crossing. Respondent saw appellant crossing her lane, but was unable to avoid a collision. Appellant's vehicle sustained damage between $300 and $500. Respondent was able to drive her car home after the accident.

### Appellant's Intoxication

At the time of the accident, David Cameron was a customer at a gas station northeast of the accident scene. He observed the collision and proceeded to the scene of the accident. When he arrived, appellant and respondent had gotten out of their automobiles. Cameron later testified that he heard appellant speak, and that appellant's speech was slurred. He also testified that he smelled alcohol on appellant's breath. Cameron had never met appellant before the accident and has not seen her since then. The investigating officer did not testify. The court took judicial notice of the fact that, based on the records, the only charge against appellant was failure to yield the right of way. Respondent did not testify as to appellant's condition at the

time of the accident. Appellant did not testify at trial, and there was no further evidence of appellant's intoxication or sobriety at the time of the accident.

*Respondent's injury*

On the day after the accident, respondent went to the emergency room at St. Mary's Hospital in Detroit Lakes. Respondent was unable to work for a few days after the accident and had back trouble when lifting and mopping at the fast food restaurant at which she worked. After her discharge from St. Mary's, she sought chiropractic care from Dr. Wething for about six months. Dr. Wething referred respondent to Dr. Johnson at the Neurological Institute in Fargo. After she saw Dr. Johnson, appellant saw Dr. Weum, a chiropractor who treated her for a month or two. Subsequently, appellant saw another chiropractor, Dr. Klingsborn. She discontinued treatment with him when she moved from Detroit Lakes to Wahpeton, where she saw Dr. Cook, another chiropractor, whom she saw two or three times a month at the time of trial.

At the time of the accident, respondent was working part-time at minimum wage in a fast food restaurant. At the time of trial, she was working forty hours per week at a different restaurant where she was making $2.80 per hour plus tips. Respondent also sold crystal, babysat three to four nights a week for four to eight hours at a time, and helped to run her fiance's hotel. Work at the hotel included making beds, doing laundry, and occasionally shoveling the entrance to each of 16 units, as well as portions of the parking lot, without the aid of a snowblower.

Respondent asserts she suffers pain when she works, and that back and neck pain interfere with her ability to work. Her back and neck pains also interfere with her ability to enjoy leisure activities.

Numerous experts testified with respect to respondent's injury. Two chiropractors, Drs. Weum and Klingsporn, and two physicians, Drs. Ivers and Stahn, testified that respondent's injury was permanent or longstanding. One chiropractor, Dr. Hammond and one physician, Dr. Hall, testified that respondent's injury was not permanent. Dr. Hall also testified that longstanding chiropractic therapy of the type respondent had undergone could have reinjured the ligaments and overstressed muscles and joints.

## ISSUES

1. Did the trial court err as a matter of law by submitting the issue of punitive damages to the jury?

2. Did the evidence support the jury's finding of no permanent injury to respondent?

3. Is respondent entitled to costs incurred to procure expert medical testimony to support her claim for punitive damages?

## ANALYSIS

### I.

*Punitive Damages*

In its "supplemental verdict," the jury found appellant was intoxicated at the time of the accident, found the intoxication was the cause of the accident, and found respondent was entitled to punitive damages in the amount of $20,000. The trial court awarded respondent punitive damages per Minn.Stat. § 549.20 subd. 1 (1984), which provides:

> Punitive damages shall be allowed in civil actions *only upon clear and convincing evidence that the acts of the defendant show a willful indifference to the rights or safety of others.*

(Emphasis added).

We will not set aside jury findings unless they are manifestly and palpably contrary to the evidence viewed as a whole and in the light most favorable to the verdict. However, we do here, as we are compelled to find that punitive damages are manifestly contrary to the evidence even when viewed in a light most favorable to the verdict. *See Savage v. K–Mart Corp.*, 393 N.W.2d 25, 27 (Minn.Ct.App.1986), *citing*

*Hakala v. Megarry Bros.*, 309 Minn. 561, 562, 244 N.W.2d 156, 157 (1976).

This court has interpreted Minn.Stat. § 549.20 to permit recovery of punitive damages from drunk drivers when the facts are egregious, although the statute does not expressly provide for recovery of punitive damages in such cases. *Hawkinson v. Geyer*, 352 N.W.2d 784 (Minn.Ct. App.1984). In *Hawkinson*, the driver and others had been drinking for nearly twelve hours when they got into a car. The driver was unlicensed. She began speeding down Minnehaha Avenue, swerving from curb to curb, driving across medians, down sidewalks, and through appellants' front yard before crashing into the living room of appellants' garden-level apartment. The driver's blood alcohol level after the accident was .28. *Id.* at 786. Appellants, two senior citizens, were injured when one was pinned to the wall and the other was pinned under the car. This court held that, viewed in the light most favorable to the defendants, the evidence was

> sufficient to sustain the claim that defendants acted with "wilful indifference to the rights or safety of others," entitling plaintiffs to have the issue of punitive damages submitted to a jury.

*Id.* at 788–89.

In *Anderson v. Amundson*, 354 N.W.2d 895 (Minn.Ct.App.1984), the driver had been driving in an erratic manner when his truck collided with the center median and right curb several times. Finally, the truck went out of control and crossed over the median and collided with the victim's automobile. The driver had been drinking during the afternoon and evening prior to the accident, and had a blood alcohol level of .24 after the accident. He pleaded guilty to DWI. This court stated that

> [i]f the act of drinking and driving was of such a nature that a jury could find Amundson acted with "a willful indifference to the rights or safety of others," an award of punitive damages is an appropriate sanction for the operation of a motor vehicle while under the influence of alcohol. As in any other case wherein

a punitive damage claim is made, *the trial court must initially determine whether the evidence is sufficient to submit the issue to the jury.*

*Id.* at 898 (emphasis added). *See also Erickson v. Hinckley Municipal Liquor Store*, 373 N.W.2d 318, 325 (Minn.Ct.App. 1985) where we declined to find "clearly erroneous" a trial court's refusal to instruct the jury on punitive damages, although the driver who was racing down the highway and was involved in a head on collision had consumed substantial amounts of beer and five or six cocktails.

Appellant claims that the evidence presented at trial concerning the facts of the accident and the condition of defendant, which consisted only of the testimony of respondent and of David Cameron, was not sufficient to submit the issue of punitive damages to the jury. We agree.

The investigating officer who was present at the scene of the accident did not testify. The trial judge took judicial notice of the fact that the only file on record involving defendant was a charge of failing to yield the right of way. Cameron testified that appellant's speech was slurred and that he smelled alcohol on her breath. In his opinion, appellant was intoxicated at the time of the accident. Cameron testified to nothing more. No evidence in the record indicated any conduct on the part of appellant beyond what would constitute ordinary negligence.

Appellant's blood alcohol level was not tested, and respondent did not testify about appellant's condition after the accident. Although the manner in which an accident happens may bear on the issue of the driver's intoxication, *State v. Traver*, 198 Minn. 237, 239, 269 N.W. 393, 394 (1936), appellant's admitted failure to yield does not inevitably point to intoxication.

The evidence here falls far short of the kind of clear and convincing evidence of intoxication found in *Hawkinson* and *Anderson*, where there was clear evidence of total inability to control a vehicle, test results showing high blood alcohol content, and enough egregious facts to support

findings of willful indifference to the rights and safety of others. Here we hold that a single witness' testimony of slurred speech following the collision and a "smell of alcohol" does not meet the threshold needed to submit to the jury whether willful indifference to the rights and safety of others warranted punitive damages.

## II.

*Permanence of Injury*

Respondent claims the evidence does not support the jury's finding that her injury is not permanent. We will affirm a verdict if it can reasonably be reconciled with the evidence and its fair inferences. *Vanderweyst v. Langford,* 303 Minn. 575, 576, 228 N.W.2d 271, 272 (1975).

The decision of a jury on the question of * * * damages will not be set aside unless it is manifestly contrary to the evidence viewed as a whole in the light most favorable to the verdict.

*Frey v. Montgomery Ward & Co., Inc.,* 258 N.W.2d 782, 787 (Minn.1977).

■ Here, six expert witnesses reached conflicting conclusions. Two physicians and two chiropractors testified that respondent had longstanding or permanent injury. One physician and one chiropractor testified that respondent's injury was not permanent. Dr. Hammond, a chiropractor called by appellant, testified that the thermograms upon which respondent's expert relied were not universally accepted, reliable diagnostic tools. He also testified that respondent's expert deviated from proper procedure in making the thermograms by failing to repeat the procedure twice, once two hours later and once twenty-four hours later. The physician testifying for appellant opined the therapy respondent received after the accident may have reinjured her neck or lower back.

In view of testimony on respondent's activity level, the jury may have placed the blame for respondents' backaches, neck pain, and headaches on her workload. There was also testimony that the torque and twist resulting from the impact would have been insufficient to result in permanent injury of the sort respondent claims to have sustained and further testimony, even from respondent's own expert witnesses, that she had full range of motion, although she complained of pain. Additionally, there was evidence that respondent had been involved in a subsequent automobile accident which, at least temporarily, aggravated her condition. We hold that the evidence supports the jury finding of no permanent injury.

## III.

*Costs*

Respondent contends that the trial court erred by failing to award costs for expert witness fees or the expense of taking their depositions. She bases her claim for costs on Minn.Stat. § 549.20, subd. 3 (1984), the punitive damages statute.

In the punitive damages phase of the trial, respondent did not put the experts on the stand. She claims their testimony, from the liability and damage phase of the first trial, was part of the basis for the jury award of $20,000 for punitive damages. Appellant argues that the witnesses were not technically "called" in the punitive damage phase and the costs for their testimony are thus not properly taxable. Respondent argues that the costs should be taxable, as both sides understood that the same jury had in front of it the testimony on the compensation phase. Because of our holding that punitive damages should not have been awarded, we decline to address the issue as to whether respondent's expert witness costs in the compensation phase warranted taxation in the punitive phase.

## DECISION

1. The evidence did not support the trial court's submission of punitive damages issue to the jury.

2. The evidence supported the jury's finding that respondent had sustained no permanent injury as a result of the accident.

3. Because punitive damages were not recoverable, the claimed costs to procure medical testimony to support the punitive damage claim are not recoverable.

Affirmed in part and reversed in part.